FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 31, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY O.,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                              Defendant. | NO:  1:22-CV-3019-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Kimberly O.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 11.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claims for Social Security Income ("SSI") and

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

Disability Insurance Benefits ("DIB") under Titles XVI and Title II, respectively, of the Social Security Act (the "Act").  *See* ECF No. 10 at 1.

Having considered the parties' motions, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment, and grants summary judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff first applied for DIB and SSI in November 2011 and did not appeal denial of those claims beyond the Social Security Administration.  Administrative Record ("AR")[2] 59.  With respect to the instant appeal, Plaintiff applied for DIB and SSI on April 14, 2015, alleging an onset date of April 19, 2013, with a date last insured of June 30, 2016.  AR 18, 292–304.  Plaintiff was 35 years old on the alleged disability onset date and asserted that she was unable to work due to degenerative disc disease of her lumbar spine, psychosis, back surgery, knee pain bilateral knee pain, tachycardia, anxiety, depression, and obesity.  AR 331.  Plaintiff alleged that she stopped working in 2011 due to her conditions.  AR 331.  Plaintiff's

---

[2] The Administrative Record is filed at ECF No. 8.

application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 14.

On March 22, 2018, Plaintiff appeared by video from Yakima, Washington, for a hearing held by Administrative Law Judge ("ALJ") Laura Valente from Seattle, Washington.  AR 15, 28.  Plaintiff was represented by counsel Chad Hatfield.  AR The ALJ heard from Plaintiff as well as vocational expert Daniel McKinney.  AR 63−101.  ALJ Valente issued an unfavorable decision, and the Appeals Council denied review.  AR 1−3, 28.

Plaintiff sought review in the U.S. District Court for the Eastern District of Washington.  On June 3, 2020, United States Magistrate Judge John Rodgers granted in part summary judgment for Plaintiff and remanded the case for additional proceedings.  AR 1475−89.  Judge Rodgers remanded Plaintiff's case to the Commissioner with instructions to reevaluate the medical evidence and Plaintiff's subjective complaints; formulate a new RFC; obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.  AR 1488.

On November 18, 2021, Plaintiff appeared for a second hearing, again represented by Mr. Hatfield, before ALJ Valente.  AR 1393.  All parties appeared telephonically, with Plaintiff's consent, due to the novel coronavirus (COVID-19) pandemic.  AR 1367, 1395.  Plaintiff, medical expert Abdolali Elmi, MD, and

vocational expert Jennifer Bowes testified in response to questions from ALJ

Valente and counsel.  AR 1396–1426.

Dr. Elmi, an orthopedic surgeon, testified that, based on his review of

Plaintiff's medical record, Plaintiff's "main limitation is from her pain in the lower

back" and that in his opinion:

> [Plaintiff] would be in a category of light duty, and she should be able
> to stand and walk [sic] total of four hours in eight hours of work, with
> notable resting every half an hour for five minutes or so. She should be
> able to sit six hours with, again, frequent change of position and one
> side to the other side, leaning or standing or stretching. And other
> postural limitation, in my opinion, includes occasional climbing stairs
> and ramps, and never climbing ladders and the ropes and scaffolding,
> occasional balancing, occasional stooping, no kneeling because of the
> history of knee arthritis.

AR 1398–99.  Regarding environmental limitations or limitations related to

symptoms from mental illness, Dr. Elmi deferred to Plaintiff's treating physicians.

AR 1399−1400.

Plaintiff reported that she last worked in in 2011 as a caregiver at an assisted

living facility, when Plaintiff was 33 years old.  AR 318, 322, 1421.  Plaintiff

testified that prior to the COVID-19 pandemic, she attended some treatment sessions

with mental health counselors, but was not comfortable because she was not able to

see the same counselor each session, and at one point was seeing a counselor

specializing in children due to a shortage in counselors specializing in adults.  AR

1411.  Plaintiff recounted that during the pandemic she has mostly stayed home and

has sought little medical care because she is considered at high-risk of complications because of her "heart problems."  AR 1410.

Plaintiff testified that she has a hard time encountering new people and also "fight[s]" a lot with her mother and boyfriend, particularly if they remind her to pick up after herself or tell her she has not completed a chore correctly.  AR 1412 (adding, "I get angry and violent, and I start throwing and breaking things").  Plaintiff stated that she has had fewer angry outbursts during the pandemic because she has been around fewer people.  AR 1413.  Plaintiff testified that police responded to her residence a couple of years before the hearing when Plaintiff called 911 after she hurt her boyfriend in "a fit of anger."  AR 1408.  Police resolved the situation at the house, and Plaintiff was not arrested or charged with any offense.  AR 1409.

Plaintiff recounted that she must elevate her legs above her waist four or five times each day, for 20-30[3] minutes each time, depending on "how bad" the fluid retention is.  AR 1413.  Plaintiff clarified that her right knee bothers her the most.  AR 1418.  Plaintiff also testified that she sometimes lies down to relieve pain in her lower back and that she periodically needs to take a break from doing chores such as washing dishes to lie down.  AR 1414−15.  Plaintiff continued that sitting "for about

[3] The transcript is unclear whether Plaintiff indicated that she elevates her legs for 20-23 minutes each time, or 20-30 minutes each time. *See* AR 1413−14.

five minutes or longer" also results in pressure on her back that she relieves by lying down.  AR 1415.  Plaintiff also spoke of hand numbness and pain, which results in her taking 30-minute breaks when she is writing by hand for five minutes or longer and requires her to wear braces at night.  AR 1415−16.  Plaintiff testified that she has dropped dishes due to her hand numbness.  AR 1416.

### *ALJ's Decision on Remand*

On December 13, 2021, ALJ Valente issued an unfavorable decision.  AR 1371–85.  Applying the five-step evaluation process, ALJ Valente found:

**Step one:** Plaintiff meets the insured status requirements of the Act through June 30, 2016, and Plaintiff has not engaged in substantial gainful activity since April 19, 2013, the alleged onset date.  AR 1370.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: obesity, degenerative disc disease, degenerative joint disease of the right knee, arrhythmias, carpal tunnel syndrome of the right upper extremity, De Quervain's tenosynovitis in the left upper extremity, depressive disorder, anxiety disorder, personality disorder, and substance abuse disorder.  AR 1370.

**Step three:** The ALJ concluded that Plaintiff's impairments, considered singly and in combination, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 1370.  In

reaching this conclusion, the ALJ made numerous findings about what was lacking

from the record to show that that Plaintiff's spine impairment meets or medically

equals Listings 1.15 or 1.16.  AR 1370.  The ALJ also found that the record does not

establish the requisite components of Listing 1.18 (concerning abnormality of a

major joint), Listing 4.05 (concerning arrythmia), or Listing 11.14 (concerning

disorganization of motor function in two extremities).  AR 1371.

The ALJ also memorialized that she considered whether Plaintiff's mental

impairments satisfy the "Paragraph B" criteria by resulting in one extreme limitation

or two marked limitations in a broad area of functioning.  AR 1371.  The ALJ found

that Plaintiff is moderately limited in: understanding, remembering, or applying

information; interacting with others; and concentrating, persisting, or maintaining

pace.  AR 1371–72.  With respect to adapting or managing herself, the ALJ found

that Plaintiff has no limitation.  AR 1372.  The ALJ found, in addition, that Plaintiff

failed to establish the presence of the "paragraph C" criteria.  AR 1372.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has

the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)

except that she: can sit for six hours with changes of position in the seat frequently;

can stand and stretch for a few minutes; can continue working while in the changed

position; can sit for a total of six hours in an eight-hour workday; can stand/walk for

1  four hours in an eight-hour workday with changes of position every half hour for

2  five minutes; can continue working while in the changed position; can occasionally

3  balance, stoop, and climb ladders and ramps; can never kneel, crawl, or climb

4  ladders, ropes, or scaffolds; and can occasionally push and pull with the right

5  lower extremity." AR 1373.

6        In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements

7  concerning the intensity, persistence, and limiting effects of her alleged symptoms

8  "are not entirely consistent with the medical evidence and other evidence in the

9  record" for several reasons that the ALJ discussed. AR 1374.

10       **Step four:** The ALJ found that Plaintiff is unable to perform any past relevant

11 work. AR 1383.

12       **Step five:** The ALJ found that Plaintiff has a high school education; was 35

13 years old, which is defined as a younger individual (age 18-49), on the alleged

14 disability onset date; and that transferability of job skills is not material to the

15 determination of disability because the application of the Medical-Vocational

16 Guidelines to Plaintiff's case supports a finding that Plaintiff is "not disabled,"

17 whether or not Plaintiff has transferable job skills. AR 1384. The ALJ found that

18 there are jobs that exist in significant numbers in the national economy that Plaintiff

19 can perform considering her age, education, work experience, and RFC. AR 1384–

20 85. Specifically, the ALJ recounted that the VE identified the following

21

representative occupations that Plaintiff would be able to perform with the RFC: router (light, unskilled work, with 67,500 jobs in the national economy, a number that was reduced to allow for no public contact); small products assembler I (light, unskilled work, with 18,100 jobs in the national economy, a number that was reduced to account for sit/stand work); and office helper (light, unskilled work with 10,400 jobs in the national economy, a number that was reduced to account for a limitation to no public contact).  AR 1384–85.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time from April 14, 2013, through the date of the ALJ's decision.  AR 1385.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

1989).  Substantial evidence "means such evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

record as a whole, not just the evidence supporting the decisions of the

Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the

proper legal standards were not applied in weighing the evidence and making a

decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

1988).  Thus, if there is substantial evidence to support the administrative findings,

or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the

Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the claimant can perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously assess the medical opinion evidence?

2.    Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?

3.    Did the ALJ conduct an adequate analysis at step five?

***Medical Opinion Testimony***

Plaintiff disputes the ALJ's treatment of three medical source opinions, from examining physician Mary Pellicer, MD, examining psychologist Rebekah A. Cline, PsyD, and treating physician's assistant Jackie S. Shuey, PA-C.  ECF No. 10 at 11–17.

The Commissioner responds that substantial evidence supports the ALJ's assessment of the relevant medical opinions and that the law of the case doctrine bars reconsideration of the ALJ's assessment of Dr. Cline's and PA-C's opinions . ECF No. 11 at 14.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

Plaintiff applied for SSI on approximately April 14, 2015. AR 1367. Revisions to rules guiding the evaluation of medical evidence that took effect on March 27, 2017, do not apply to claims filed before March 27, 2017, and the "treating physician rule" under the previous regulations instead applies. *See* 20 C.F.R. § 416.927.

Under the treating physician rule, "the weight afforded to a medical opinion depends upon the source of that opinion. A treating physician's opinion, for example, is entitled to greater weight than the opinions of nontreating physicians." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). An ALJ must consider the acceptable medical source opinions of record and assign weight to each. 20 C.F.R. §§ 404.1527(c), 416.927(c). This responsibility often involves resolving conflicts and ambiguities in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick*, 157 F.3d at 725).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1   An ALJ may discount an otherwise valid medical source opinion as overly

2   conclusory, poorly supported by or inconsistent with the objective medical record,

3   or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ

4   provides clear and convincing reasons to discredit the symptom allegations.  *See,*

5   *e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

6   <u>Mary Pellicer, MD</u>

7   Plaintiff argues that the ALJ erroneously evaluated the opinion of examining

8   physician Dr. Pellicer by failing to offer any explanation or record evidence to

9   support her findings.  ECF Nos. 10 at 11–13; 12 at 2–3 (citing *Embrey v. Bowen*,

10   849 F.2d 418, 421–22 (9th Cir. 1988), for the proposition that discounting a medical

11   opinion by broadly finding that it is not supported by sufficient objective findings

12   "does not achieve the level of specificity" that Ninth Circuit caselaw requires).

13   Plaintiff also argues that the opinion of Dr. Elmi, a non-examining physician, cannot

14   by itself constitute substantial evidence to reject the opinion of an examining

15   physician.  ECF No. 12 at 2 (citing *Lester v. Chater*, 81 F.3d 821, 830–32 (9th Cir.

16   1995); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008)).

17   Plaintiff asserts that Dr. Pellicer reviewed more than two years of records within the

18   relevant time period, from 2013 until 2015, and Dr. Pellicer's opined limitations

19   were supported by her examination of Plaintiff.  ECF No. 12 at 3 (citing *Ryan*, 528

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

F.3d at 1199–1200, for the proposition that an ALJ may not reject an opinion that is not based more heavily on a patient's self-reports than on clinical observations).

The Commissioner responds that in the presence of conflicting opinions from Dr. Elmi and Dr. Pellicer, the ALJ could discount Dr. Pellicer's opinion for specific and legitimate reasons, and Dr. Elmi's opinion independently amounts to substantial evidence given that he was cross-examined by Plaintiff's counsel.  ECF No. 11 at 4–5 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

Dr. Pellicer examined Plaintiff and evaluated her physical impairments and functioning on June 16, 2015.  AR 1011–19.  Dr. Pellicer opined that Plaintiff has the following functional limitations:

- She is able to stand and walk for less than 2 hours in an 8 hour day with more frequent breaks due to back and knee pain.
- She is able to sit for about 6 hours cumulatively in an 8 hour day with more frequent breaks due to back and knee pain.
- No assistive devices are needed although this may be helpful to start using.
- The claimant would be capable of lifting and carrying 10 lbs occasionally due to back and knee pain.
- The claimant can't bend, squat, crawl, kneel or climb due to back and knee pain.
- There are no manipulative restrictions.
- She is able to see, hear, speak and travel independently and do all the necessary daily self-care activities.

AR 1016.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Judge Rodgers' June 3, 2020 order granting partial summary judgment to Plaintiff (the "District Court Order") found that ALJ Valente had not offered specific and legitimate reasons for the weight that she assigned Dr. Pellicer's opinion after the first hearing.  AR 1482.

On remand, ALJ Valente reconsidered the opinion of Dr. Pellicer and found that Dr. Pellicer's findings, "including slow gait, tenderness, and decreased range of motion are consistent with some limitations, which are accounted for in the residual functional capacity . . . .  Dr. Pellicer did not note any significant gait difficulties, focal neurologic deficits, or manipulative difficulties."  AR 1378.  The ALJ subsequently discussed Dr. Pellicer's opinion regarding Plaintiff's functional limitations and determined that "several reasons" supported not giving the opinion significant weight.  AR 1381.  The ALJ reasoned that Dr. Pellicer's review of the records was limited to imaging from 2011 and 2015, while treatment records that Dr. Pellicer "did not have the benefit of reviewing document generally modest objective findings and reflect improvement with treatment including medication and injections, as discussed above."  AR 1381.  The ALJ also made several findings that the degree of limitations that Dr. Pellicer assessed exceeded any limitations compelled by Dr. Pellicer's objective findings of Plaintiff or Plaintiff's longitudinal medical record.  AR 1381.  Specifically, the ALJ found that: "there are no findings

that would support a 10 pound lifting limitation, as strength and upper extremity motion was unremarkable; the only support for the limitation was the claimant's pain"; "the limitation to standing and walking for two hours is not supported; even though the claimant presented with a slow gait and some decreased range of motion of the back and knees, there were no focal neurologic deficits, and she was able to walk slowly on her heels and toes and in tandem; in addition, other records note normal gait"; and "Dr. Pellicer indicated that most limitations were based on the claimant's back and knee pain, indicating that she relied in large part on the claimant's subjective reports, which are not entirely consistent with the modest objective findings or corroborated by the longitudinal medical record that reflects limited treatment. For these reasons, this opinion is not given significant weight. Greater weight is given to the opinion." AR 1381. The ALJ gave more weight to the opinion of medical expert Dr. Elmi "who reviewed the entire record and provided an explanation for his opinion." AR 1381.

Dr. Pellicer's assessed limitations are accommodated in large part in the ALJ's RFC. AR 1016, 1373. However, Dr. Pellicer opined that Plaintiff could stand or walk for only two hours in an eight-hour day "with more frequent breaks due to back and knee pain," while the ALJ found that Plaintiff could "walk for four hours in an eight-hour workday with changes of position every half hour for five minutes and can continue working while in the changed position." AR 1016, 1373.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

By contrast, Dr. Elmi testified that, considering Plaintiff's lower back pain, Plaintiff "should be able to stand and walk [sic] total of four hours in eight hours of work, with notable resting every half an hour for five minutes or so."  AR 1398.  The ALJ also did not incorporate Dr. Pellicer's ten-pound restriction into the RFC.   AR 1016, 1373.

Dr. Pellicer did not explain why two hours in an eight-hour day is the maximum that Plaintiff could stand and walk.  AR 1016.  Nor did Dr. Pellicer explain why she concluded that Plaintiff is limited to lifting ten pounds when Dr. Pellicer's own examination determined that Plaintiff has full strength in all major muscle groups.  AR 1016.  Accordingly, the ALJ properly discounted Dr. Pellicer's opinions because they were not supported by the physician's own examination findings or the record as a whole.  AR 1016, 1381; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").

In addition, the ALJ permissibly rejected Dr. Pellicer's opinion in favor of the conflicting opinion of testifying medical expert Dr. Elmi.  *See Morgan v.*

*Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999) (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"). The medical record supports that Plaintiff displayed a full range of motion in her neck and back in medical appointments in 2020 and 2021. AR 1771–73, 1789–90. This evidence in the record is more consistent with a lesser limitation, such as Dr. Elmi's, than a more extreme limitation such as Dr. Pellicer's. The Court finds no error in the ALJ's reconsideration of Dr. Pellicer's opinion on remand.

<u>Rebekah A. Cline, PsyD</u>

Dr. Cline completed a psychological evaluation of Plaintiff on May 19, 2015. AR 1006−10. Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Cline's opinion by noting that: (1) Dr. Cline did not review records; (2) she did not provide objective evidence of explanation for her assessed limitations; (3) a measure on the BDI-II showed possible symptom magnification; and (4) the opinion was for a duration of six to nine months. ECF No. 10 at 15 (citing AR 1382).

The Commissioner responds that the District Court Order previously found that the ALJ's evaluation of Dr. Cline's opinion was error-free, and the law of the case doctrine prohibits revisiting the issue. ECF No. 11 at 8 (citing *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The Commissioner further argues that the rule of

1    mandate prohibited the ALJ from contradicting the mandate of the District Court.

2    *Id.* at 8−9 (citing *Stacy*, 825 F.3d at 567−68).  The Commissioner adds that Plaintiff

3    has not shown prejudice from application of these doctrines because the lone post-

4    remand examination that she cites to argue that her symptoms lasted longer than six

5    to nine months "has no bearing on whether Dr. Cline's opinion from 2015 accurately

6    described [Plaintiff's] functioning."  *Id.* at 9 (citing ECF No. 10 at 16 (citing AR

7    1777−79)).  The Commissioner continues that, even if the Court were to reconsider

8    whether the ALJ reasonably assessed Dr. Cline's opinion, the ALJ provided

9    adequate reasons to discount Dr. Cline's opinion and accord greater weight to the

10   opinions of Drs. Fligstein and Donahue.  *Id.*  The Commissioner maintains that the

11   ALJ could not have prejudicially erred by rejecting an opinion that does not meet the

12   durational requirement.  *Id.* at 9−10 (citing *Quang Van Han v. Bowen*, 882 F.2d

13   1453, 1458 (9th Cir. 1989)).

14        Plaintiff replies that the updated record, post-remand, "provide material

15   support for the veracity of" Dr. Cline's findings in her 2015 evaluation."  ECF No.

16   12 at 6.  Plaintiff cites records from January 2017 and September 2021 to show that

17   claimant continued to present with severe mental health symptoms and functional

18   deficits past the six to nine months duration indicated in Dr. Cline's evaluation.  *Id.*

19   at 7 (citing AR 1289−92, 1777−79).

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    The law of the case doctrine applies in a Social Security context and generally

2    prohibits a court "from considering an issue that has already been decided by that

3    same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567

4    (9th Cir. 2016).  However, the Ninth Circuit has determined that the doctrine

5    "should not be applied when the evidence on remand is substantially different, when

6    the controlling law has changed, or when applying the doctrine would be unjust."

7    *Id*.  Application of the law of the case doctrine is at the Court's discretion.  *Id*.

8    The District Court Order found that ALJ Valente did not err in her assessment

9    of Dr. Cline's opinion in the first ALJ decision, finding that a lack of explanation by

10    Dr. Cline regarding how she reached her opinion that Plaintiff has marked

11    limitations was a relevant factor for the ALJ to consider.  AR 1483.  The District

12    Court Order also directed: "However, as this case is being remanded for further

13    consideration of other medical evidence, the ALJ shall reevaluate the entire record in

14    making the new decision."  AR 1483.

15    On remand, ALJ Valente again gave Dr. Cline's opinion little weight and

16    reasoned that: "Dr. Cline did not review records as part of her evaluation, and

17    treatment records show generally good control of the claimant's symptoms with

18    medication"; "Dr. Cline provided no explanation or support for the limitations she

19    assessed, and did not relate any of the mental status examination findings to her

20    opinion"; and "Dr. Cline noted that scores on the BDI-II were 'quite high' and

21

1    'suggestive to at least some level of symptom magnification at this time.' The

2    claimant score was also higher than the cutoff score and was considered invalid;

3    however, Dr. Cline did not discuss how findings affected the limitations she

4    assessed; and "Finally, [Dr. Cline] indicated that the limitations she assessed would

5    be only of six to nine months' duration, which is less than the 12-month durational

6    requirement in the regulations."  AR 1382.

7         Plaintiff does not cite the Court to any parts of the post-remand record that

8    differ substantially with respect to supporting the opinion that Dr. Cline gave in

9    2015.  Moreover, in giving Dr. Cline's opinion little weight on remand, the ALJ

10   provided the same reasons already accepted by this Court as adequate in 2020.  As

11   no exception to the law of the case applies, the Court declines to reanalyze

12   arguments from Plaintiff that have already been considered and resolved by this

13   Court.  Consequently, it is irrelevant whether supplemental evidence on remand

14   alters the duration of the limitations that Dr. Cline assessed has changed, as the

15   treatment of the underlying opinion about those limitations is without error.  The

16   Court finds no reversible error in the ALJ's treatment of Dr. Cline's opinion.

17            Jackie S. Shuey, PA-C

18        Plaintiff maintains that the ALJ erroneously evaluated recommendations by

19   Plaintiff's treatment provider Ms. Shuey in 2014 and 2015 that Plaintiff elevate her

20   legs.  ECF No. 10 at 17.  Plaintiff maintains that the record rebuts the ALJ's

21

1    conclusion that Ms. Shuey's findings were vague and temporary in nature by the fact

2    that Ms. Shuey made the same recommendation in 2014 and 2015 and noted

3    longstanding degenerative joint disease in both knees.  *Id.*  Therefore, Plaintiff

4    maintains, the ALJ failed to provide specific reasons for rejecting Ms. Shuey's

5    opinion, which would be disabling considering the vocational expert testimony that a

6    need to elevate her legs during the workday would preclude competitive

7    employment for Plaintiff.  *Id.* (citing AR 1425−26).

8         The Commissioner responds that Plaintiff cannot re-raise a challenge to the

9    ALJ's treatment of Ms. Shuey's opinion, under the law of the case doctrine and the

10   rule of mandate, because this Court previously affirmed the ALJ's assessment of Ms.

11   Shuey's reports, and Plaintiff "cites to no evidence that post-dates the ALJ's

12   decision."  ECF No. 11 at 10.  The Commissioner continues that "even if this Court

13   revisited the ALJ's assessment of PA-C Shuey's statements, this Court would have

14   to affirm."  *Id.* at 11.  The Commissioner argues that the ALJ reasonably found Ms.

15   Shuey's limitations regarding elevating her feet "as needed" and "as able," were

16   vague, and was not required to accept vague limitations that also do not meet the

17   durational requirement.  *Id.* (citing AR 596, 598; *Ford v. Saul*, 950 F.3d 1141, 1156

18   (9th Cir. 2020); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *Quang Van*

19   *Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989)).

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

Plaintiff's treating provider Ms. Shuey opined on October 27, 2014, that Plaintiff should elevate her feet "as able during periods of sitting longer than 20 minutes" until December 31, 2014.  AR 587−98.  On February 2, 2015, Ms. Shuey directed the correctional facility where Plaintiff was detained to allow Plaintiff to "elevate legs as needed during prolonged sitting" until March 20, 2015.  AR 595−96. The District Court Order concluded that the ALJ did not err in her treatment of Ms. Shuey's treatment notes, finding in whole:

> The Court finds the ALJ did not err. The notes do not contain specific requirements regarding how frequently or for how long Plaintiff needed to elevate her feet, noting the action should be allowed "as able" and "as needed."  Furthermore, the second note was given following injections to Plaintiffs [sic] knees, when she was directed to limit strenuous activities over the next five days.  Because these notes were not clear limitations and do not appear to have been intended as permanent, the ALJ did not err.

AR 1484 (citing AR 1079).  On remand, the ALJ gave Ms. Shuey's statements regarding Plaintiff elevating her legs "little weight" because "the limitations were vague and temporary in nature."  AR 1381.  The ALJ gave greater weight to the opinion of medical expert Dr. Elmi "who accounted for the claimant's impairments with position changes, but opined that elevation of the legs was not necessary."  AR 1381.

As with Dr. Cline, the Court finds no support for any exception to the law of the case doctrine, and the District Court Order conclusively resolves the issue of whether the ALJ erred in not accepting Ms. Shuey's opinion as an ongoing

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

limitation. AR 1484. Moreover, on remand, the ALJ provided a clear and convincing reason discounting Ms. Shuey's statements regarding Plaintiff's limitation on the basis that they were vague and tentative, merely asking that Plaintiff be allowed to elevate her legs "as able" and "as needed" during two separate periods of less than two months each. AR 595−98. An ALJ may assign less eight to an opinion if it is vague. *See Meanel*, 172 F.3d at 1113−14. Therefore, the Court finds no error based on the ALJ's evaluation of the reports authored by Ms. Shuey.

Having found no error based on the treatment of medical source opinions, the Court denies Plaintiff's Motion for Summary Judgment on this issue and grants summary judgment to the Commissioner on the same.

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for making a negative credibility finding. ECF No. 10 at 18–20. Plaintiff offers the following justifications for finding reversible error: (1) Plaintiff testified that her two left wrist surgeries did not relieve her symptoms; (2) the ALJ does not explain how injections, surgeries, and use of braces amounts to "minimal treatment" for Plaintiff's bilateral wrist impairments; (3) the record shows that Plaintiff's condition did not improve after her 2011 spinal surgery and periodic treatment for both her back and knees, including injections, aspiration, medication refills, and plateau of

symptoms; (4) Plaintiff's testimony and medical records indicate an increasing

frequency of supraventricular tachycardia ("SVT"); (5) caselaw has recognized that

mental illness is underreported and prohibits the agency from penalizing claimants

for failing to seek treatment; and (6) Plaintiff's medical records demonstrates severe

mental health findings as well as ongoing treatment for anxiety and depression in

September 2021.  ECF No. 10 at 18–19.

The Commissioner responds that the ALJ reasonably found Plaintiff's

subjective complaints unpersuasive based on Plaintiff's activities, including part-

time work, as well as the objective medical evidence.  ECF No. 11 at 11–13.  The

Commissioner maintains that substantial evidence supports the ALJ's analysis.  *Id.*

at 12–17.  The Commissioner asserts that Plaintiff's ability to pursue her GED and

attend church while incarcerated, work part-time in retail after released, and

independently engage in activities of daily living undermine Plaintiff's disabling

complaints.  *Id.* (citing AR 429–30, 1007, 1198, 1371–72, and 1380).  The

Commissioner also maintains that there are inconsistencies between the medical

record and Plaintiff's testimony regarding her wrist complaints, her back pain, and

her SVT symptoms.  *Id.* at 13.  With respect to Plaintiff's hands, the Commissioner

asserts that: exams were remarkable only with respect to tenderness, mild swelling,

and signs of carpal tunnel syndrome; post-surgery, Plaintiff's pain was "0/10," and

Plaintiff had full range of motion, was released to light duty work and activity, and

Plaintiff required no assistive device; and in 2020, Plaintiff had full range of motion in her arms, normal strength, and normal sensation.  *Id.* at 14 (citing AR 896, 1015, 1265, 1375, 1378, 1751, 1757, 1767, 1770–71, 1773, and 1789).  With respect to Plaintiff's heart condition, the Commissioner cites to portions of the record recording that Plaintiff was told that her condition was "nonlife threatening" [sic] and described as "somewhat bothersome," with Plaintiff's heart and respiratory examinations showing unremarkable findings.  *Id.* at 14 (citing AR 874–75, 896, 1375–76, 1742, and 1784).  The Commissioner continues by arguing that imaging of Plaintiff's knees showed only mild to moderate degeneration in her left knee, mild degeneration in her right knee, and that Plaintiff reported improvement with surgery, aspiration, and injections on her left knee.  *Id.* at 15 (citing AR 558, 640, 646, 705, 1363, and 1377–78).  Plaintiff had limited range of motion following injuries, but normal range of motion later.  *Id.* (citing AR 1323, 1377–78, 1771, and 1773).

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

1    is no evidence of malingering, "the ALJ can reject the claimant's testimony about

2    the severity of her symptoms only by offering specific, clear and convincing reasons

3    for doing so." *Smolen*, 80 F.3d at 1281.

4           The ALJ considered Plaintiff's additional testimony on remand and found that

5    Plaintiff's "statements about the intensity, persistence, and limiting effects of his or

6    her symptoms, they are not entirely consistent with or supported by the medical

7    evidence of record, which documents objective findings that support some

8    limitations that are accounted for" in the RFC.  AR 1374–75.  The ALJ's thorough

9    review of the medical evidence in comparison to Plaintiff's statements amounts to

10   specific, clear, and convincing reasons for not fully crediting Plaintiff's complaints.

11   As set forth by the Commissioner, the medical record does not corroborate the

12   severity of the symptoms that Plaintiff alleges with respect to her wrist, knee, back,

13   and heart ailments.  *See* AR 558, 640, 646, 705, 896, 1015, 1265, 1363, 1375, 1377–

14   78, 1751, 1757, 1767, 1770–71, 1773, and 1789.  For instance, Plaintiff's mild

15   restriction in range of motion and her normal gait undermine her statements

16   regarding her disabling back pain.  AR 1037, 1377–78, 1771, and 1773.  The ALJ

17   also relied on substantial evidence in noting that Plaintiff's daily activities are

18   compatible with the RFC that the ALJ formulated, and inconsistent with Plaintiff's

19   complaints.  *See* AR 1380 (noting that Plaintiff reported studying for her GED,

20   attending church services, and participating in group treatment during the relevant

21

period, and observing that Plaintiff also worked part-time as a cashier and "did not

report significant difficulties aside from some increased hand pain").

The Court finds no error based on the ALJ's treatment of Plaintiff's subjective

symptom testimony and, therefore, denies summary judgment to Plaintiff, and grants

summary judgment to Defendant, on this ground.

***Step Five***

Plaintiff contends the ALJ erred at step five because "when the improperly

rejected evidence is considered, and a proper evaluation is completed at step five, it

becomes clear that Plaintiff is disabled." ECF No. 12 at 11.  The ALJ's hypothetical

must be based on medical assumptions supported by substantial evidence in the

record that reflect all of a claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157,

1165 (9th Cir. 2001). The ALJ is not bound to accept as true the restrictions

presented in a hypothetical question propounded by a claimant's counsel. *Osenbrock*,

240 F.3d at 1164.  The ALJ may accept or reject these restrictions if they are

supported by substantial evidence, even when there is conflicting medical evidence.

*Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff's argument assumes that the ALJ erred in considering medical

opinion evidence and Plaintiff's subjective symptom testimony.  As discussed

above, the ALJ's assessment of the medical source opinions and Plaintiff's

testimony was appropriate.  Therefore, the RFC and hypothetical contained the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30

limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was proper. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005). The Court denies Plaintiff's Motion for Summary Judgment on this final ground.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** October 31, 2022.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 31